IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **KENNETH SMITH**<br>  Plaintiff, | ) JURY TRIAL DEMANDED<br>)<br>) |
| v. | ) Case No.<br>)<br>) |
| **EXPERIAN INFORMATION SOLUTIONS INC, EQUIFAX INFORMATION SERVICES LLC, AND TRANS UNION LLC**<br>  Defendants. | )<br>)<br>)<br>)<br>) |

## COMPLAINT AND JURY DEMAND

Plaintiff, Kenneth Smith, and for his complaint against defendants Experian Information Solutions Inc. ("Experian"), Equifax Information Services LLC ("Equifax) and Trans Union LLC ("Trans Union), he alleges the following:

## PRELIMINARY STATEMENT

1. This action arises out of the Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA").

## JURISDICTION

2. This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681.

1

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because some of the conduct at issue occurred in this District, Plaintiff resides in this District, and the Defendants conducts business in this District.

## PARTIES TO ACTION

4. Plaintiff, Kenneth Smith, is a natural person who resides in the Atlanta, State of Georgia, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5. Experian is regularly engaged in the business of selling consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties for monetary compensation and is considered a "consumer reporting agency" or "CRA" as defined in 15 U.S.C. § 1681a(f).

6. Equifax is regularly engaged in the business of selling consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties for monetary compensation and is considered a "consumer reporting agency" or "CRA" as defined in 15 U.S.C. § 1681a(f).

7. TransUnion is regularly engaged in the business of selling consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties for monetary compensation and is considered a "consumer reporting agency" or "CRA" as defined in 15 U.S.C. § 1681a(f).

## PURPOSE OF THE FAIR CREDIT REPORTING ACT

8. Consumer credit plays a major role in the lives of American consumers entering into the American marketplace and the economic system in general. Fair and accurate credit reporting acts as a gatekeeper to credit purchases, employment and income, basic commercial services, insurance coverage, housing rentals, and a broad range of other transactions. Robert J. Hobbs & Stephen Gardner, THE PRACTICE OF CONSUMER LAW 39-40 (2nd ed. 2006).

9. Congress investigated and determined that the banking system is dependent upon fair and accurate reporting, that inaccurate credit reports directly impair the efficiency of the banking system, and that unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. 15 U.S.C. § 1681(a)(1).

10. The FCRA was created to "ensure fair and accurate credit reporting." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 52 (2007).

11. The FCRA was proposed in 1968 as an amendment to the original Truth in Lending Act. Senator Proxmire (D-WI) announced his intention to create legislation addressing the growing frequency of cases in which a consumer "is unjustly denied because of faults or incomplete information in a credit report," and entered an initial draft of what would eventually become the FCRA into the Congressional Record. Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 114 Cong. Rec. 24904 (Aug. 2, 1968))

12. Senator Proxmire listed 5 types of abuses requiring Congressional response, including biased information and incomplete information. Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 115 Cong. Rec. 2411 (Jan. 31, 1969)).

13. Congress considered inaccurate and misleading information to be the most serious problem. Anthony Rodriguez et al., FAIR CREDIT REPORTING 10 (5th ed. 2002).

14. The FCRA applies to situations in which information relevant to a consumer's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" is collected. Anthony Rodriguez et al., FAIR CREDIT REPORTING 5 (5th ed. 2002) (citing 15 U.S.C. § 1681a(d)).

15. An inaccurate or misleading credit report can not only significantly and unfairly lower a consumer's credit worthiness but can also prevent consumers from full access to the American marketplace and negatively impact a consumer's living standard and general reputation on the whole if a consumer's character and mode of living is not accurately portrayed. Congress enacted the FCRA to prevent this arbitrary and iniquitous result.

16. Furthermore, in 1996, Congress, in an effort to increase the "accuracy and integrity" of information supplied to credit reporting agencies, added 15 U.S.C. § 1681s-2 to the FCRA by passing the Consumer Credit Reform

Act. The provision, "[r]esponsibilities of furnishers of information to consumer reporting agencies," subjected data furnishers, who were not previously covered by the FCRA, to requirements related to accuracy and the handling of consumer disputes. These provisions were originally scheduled to sunset in 2003 but were considered important enough to Congress to be made permanent in the Fair and Accurate Credit Transactions Act of 2003. Federal Trade Commission Staff: 40 Years of Experience with the Fair Credit Reporting Act, pp. 1, 2, 92. Retrieved from the FTC website: http://www.ftc.gov/os/2011/07/110720fcrareport.pdf.

## FACTUAL ALLEGATIONS

17. Mr. Smith is an upstanding citizen that pays all his bills on time and never skirts his responsibility to pay his debts, including his obligation to timely pay his creditors.

18. One of his creditors is JPMorgan Chase Bank aka Chase.

19. The Plaintiff has an auto loan with Chase.

20. Like all his other creditors, Mr. Smith makes a payment to Chase that covers or exceeds his obligation for that month.

21. Mr. Smith has never missed a payment with Chase.

22. Despite his stellar paying history with Chase, all three of his credit reports with the Defendants show a late payment in the month of November 2022.

23. Upon learning of the reported late payment, Mr. Smith contacted Chase to find out what was causing the erroneous reporting.

24. During his phone call with Chase, Mr. Smith discovered that Chase failed to process his payment in November 2022.

25. Mr. Smith's payments are initiated and/or processed via the website for Chase and Mr. Smith's responsibility is to make sure there is sufficient money in his account.

26. Prior to November 2022 and after November 2022, Mr. Smith's payments were processed by Chase each and every month like clockwork without incident.

27. In November 2022, Mr. Smith did his part—in making the money available for Chase to process—and to the extent that the payment was not processed by Chase, it was certainly not the fault of Mr. Smith.

28. Plaintiff has disputed the Chase account with all three of the CRAs.

29. The CRAs refuse to investigate Plaintiff's dispute and rely on Chase to instruct them on how to respond to the dispute.

30. When Chase receives the dispute from the CRAs, Chase does not do a true investigation that seeks to resolve the merits of the dispute.

31. Rather, Chase regurgitates the account records in its credit reporting system.

32. Chase makes no attempt to investigate whether the account records in its credit reporting system is accurate or complete.

33. The CRAs are aware of the inadequacies of Chase's investigation, but parrots Chase's response to a consumer's dispute anyway.

34. In February 2024, Plaintiff requested his credit reports from all three CRAs.

35. Equifax and Trans Union provided Plaintiff with his report. Experian did not.

36. Plaintiff disputed the Chase account again with all three CRAs.

37. The CRAs forwarded Plaintiff's dispute to Chase.

38. Prior to forwarding the dispute to Chase, the CRAs did not do any investigation into the merits of Plaintiff's dispute.

39. Once Chase received the dispute from the CRAs, Chase merely made sure the information in CRAs' system matched with the information in Chase's system.

40. In other words, Chase made sure the information was being reported consistently rather than reported accurately.

41. Despite not verifying the disputed information as accurate and complete, Chase notified the CRAs that it verified the disputed information as accurate.

42. The CRAs know Chase did not actually verify the information was accurate and complete, but accepted the false verification anyway because they did not want to investigate.

43. The CRAs have sold Plaintiff's credit reports to multiple third parties and those reports contained the delinquent payment notation in November 2022 on the Chase account.

44. Many of the third parties that purchased and received Plaintiff's credit reports from the CRAs were potential creditors that denied Plaintiff credit due to the Chase inaccuracy.

45. A number of the third parties—including Sam's, BMO, Payarc and Bank of America—that received Plaintiff's credit reports did not have a permissible purpose—they obtained Plaintiff's report under the false pretenses that Plaintiff applied for credit or otherwise authorized the credit inquiry—to receive Plaintiff's report.

## PLAINTIFF'S DAMAGES

46. Plaintiff has suffered extreme emotional distress, anxiety, depression, despair, loss of sleep, nausea, headaches, fear of never being able to get his credit reports accurate.

47. Plaintiff has also incurred out of pocket loss as a result of Defendants' inaccurate credit reporting in the form of postage, loss of time spent communicating with Defendants in excess of 50 hours and payment to repair and monitor credit.

48. As a result of Defendants' inaccurate furnishing/reporting, Plaintiff has suffered reduced credit score and profile, emotional distress, frustration, and

anxiety constituting actual damages pursuant to 15 U.S.C. § 1681o(a)(1) and § 1681n.

49. Plaintiff is entitled to attorney's fees and costs from each Defendant pursuant to 15 U.S.C. § 1681o(a)(2) and § 1681n.

## TRIAL BY JURY

50. Plaintiff is entitled to and hereby demands a trial by jury.

## CAUSE OF ACTION

## VIOLATIONS OF THE
## FAIR CREDIT REPORTING ACT –
## 15 U.S.C. § 1681 et seq.

51. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

52. Chase violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it and documentation provided by Plaintiff, failing to update and/or remove the inaccurate tradeline, reporting inconsistent information to the CRAs, failing to report the account as "disputed", and/or failing to report mitigating circumstances.

53. The CRAs violated 15 U.S.C. § 1681i(a) by failing to conduct a reasonable investigation with respect to the disputed information, failing to forward accurate portrayal of the dispute to Chase, failing to review and consider all relevant information provided by Plaintiff, failing to modify or remove

9

information that could not be verified, failing to report the account as "disputed", and/or failing to report mitigating circumstances.

54. The CRAs violated 15 U.S.C. § 1681e(b) by failing to utilize reasonable procedures to report maximum accurate information in Plaintiff's credit reports that the CRAs furnished to various third parties.

55. Experian violated 15 U.S.C. § 1681e(a) by failing to utilize reasonable procedures to prevent the release of Plaintiff's credit report to Sam's Club on April 13, 2023, Payarc on July 14, 2023 and Bank of America on March 15, 2023 for an impermissible purpose.

56. Trans Union violated 15 U.S.C. § 1681e(a) by failing to utilize reasonable procedures to prevent the release of Plaintiff's credit report to Sam's and BMO on April 13, 2023 and November 1, 2022, respectively, for an impermissible purpose.

57. As a result of Defendants' violations of the FCRA, Plaintiff has suffered actual damages not limited to detriment to his credit rating, emotional distress, embarrassment, mental anguish, and anxiety in an amount to be determined at trial.

58. Defendants' conduct, actions, and inactions were willful, rendering them liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

59. Alternatively, Defendants' violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

60. Plaintiff is entitled to recover actual damages, statutory damages, and costs and attorneys' fees from each Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that judgment be entered against Defendants for:

- an award of actual and statutory damages against each Defendant for its violations of the FCRA pursuant to 15 U.S.C. §§ 1681n and 1681o;

- an award of punitive damages against Defendants for its willful noncompliance with the FCRA pursuant to 15 U.S.C. § 1681n;

- an award of costs and attorney's fees against Defendants pursuant to 15 U.S.C. §§ 1681n and 1681o; and

such other and further relief as the Court may deem just and proper.

Dated:  July 9, 2024

By: /s/ Naja I. Hawk
NAJA I. HAWK
Pleadings@thehawklegal.com
Georgia Bar No. 916396

**THE HAWK LEGAL COLLECTIVE**
730 Peachtree Street NE, #570
Atlanta, GA 30308
Phone: (404) 439-9310

*Counsel for Plaintiff Kenneth Smith*